UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRANSCANADA POWER MARKETING LTD.,<br><br>Defendant. | : | C.A. No. 05-234S |

**AFFIDAVIT OF MICHAEL J. HAGER**

I, Michael J. Hager, upon oath, depose and state that:

1. Unless otherwise stated, I have personal knowledge of the facts stated herein and am competent to testify to such facts.

2. I live at 36 Ridge Way in Sturbridge, MA 01566.

3. I am the Vice President for Energy Supply New England, National Grid USA Service Company, Inc., an affiliate of The Narragansett Electric Company ("Narragansett").

4. Narragansett and National Grid USA Service Company, Inc., are wholly-owned subsidiaries of National Grid USA ("National Grid"), a public utility holding company.

5. Narragansett is the successor by merger in 2000 to Newport Electric Company and Blackstone Valley Electric Company, both subsidiaries of Eastern Utilities Associates ("EUA"), a public utility holding company. Narragansett delivers electricity to customers in thirty-eight Rhode Island cities and towns, with a population of over 1,000,000. A map of Narragansett's service territory is attached as Exhibit 1. Narragansett has the exclusive right

to deliver electricity to customers in those communities. Narragansett is the largest utility in Rhode Island, and serves approximately 480,000 customers. Of those customers, over 475,000 receive standard offer service.

6. I was Narragansett's business lead for the WSOS Agreement since the merger in 2000.

7. In February of 2005, Narragansett and TransCanada initiated discussions concerning their respective understandings of the FAF clause, after TransCanada complained that it was entitled to FAF payments after 2004, which Narragansett had not paid.

8. On February 18, 2005, TransCanada invoked the dispute resolution clause of the WSOS Agreement, calling for senior representatives of TransCanada and Narragansett to meet.

9. At a meeting on March 7, 2005, which the parties agreed was subject to Federal Rule of Evidence 408 and similar state laws, TransCanada and Narragansett broached the subject of an amicable resolution. At that same meeting, TransCanada expressed a strong interest in an expedited resolution, and the parties discussed a fast-track arbitration.

10. On or about March 29, 2005, Michael Hachey of TransCanada contacted counsel for the Rhode Island Public Utilities Commission ("RIPUC"), requesting a meeting with the regulators regarding the dispute.

11. At the end of March of 2005, Narragansett began making payments to TransCanada, under protest, to allow the parties to negotiate a potential settlement and to avoid giving TransCanada a pretext to terminate the WSOS Agreement, which, based on current market prices, is no longer economically advantageous to TransCanada. These payments included retroactive protest payments for the period beginning in January of 2005.

12. On or about April 1, 2005, TransCanada and Narragansett also began negotiating an agreement for a fast-track arbitration.

13. The agreement for a fast-track arbitration was heavily negotiated and was nearly complete when TransCanada and Narragansett had made substantial progress towards a settlement agreement in principle of a large portion of the dispute.

14. On April 25, 2005, TransCanada's legal counsel sent an electronic mail message to Gloria Kavanah, National Grid's Assistant General Counsel, indicating TransCanada's willingness to hold off on finalizing the arbitration agreement due to the progress being made in settlement negotiations.

15. TransCanada and Narragansett were exchanging drafts of the partial settlement agreement when TransCanada filed suit in the United States District Court for the District of Massachusetts on May 17, 2005.

16. At no time did TransCanada indicate that it no longer intended to arbitrate the dispute or the remaining portion of the dispute, in the event of a settlement of a portion of the dispute.

17. TransCanada at all times indicated its strong interest in an expedited resolution; therefore, Narragansett persisted in its belief that TransCanada continued to desire a fast-track arbitration.

18. Narragansett had no reason to believe that TransCanada would file suit since TransCanada was receiving all of the disputed FAF payments at that time.

19. Most, if not all, of the documents that are relevant to this dispute are available, or can be made available, in electronic form.

20. Negotiations prior to TransCanada's filing suit in Massachusetts took place in both Rhode Island and Massachusetts.

21. All hearings before the RIPUC, at which the FAF or the retail fuel adjustment relative to the EUA wholesale standard offer service agreements were discussed, took place in Rhode Island.

22. Narragansett employs over 470 persons in Rhode Island. Upon information and belief, TransCanada employs 8 to 10 employees in an office in Westborough, Massachusetts.

23. Although TransCanada's Eastern Division operations are located in Massachusetts, TransCanada also does business in Calgary, Alberta, Canada and Toronto, Ontario, Canada.

24. TransCanada's affiliate owns the Ocean State Power plant in Rhode Island.

25. Upon information and belief, Michael Hachey, one of TransCanada's business leads, owns a residence in Rhode Island and spends almost every weekend there.

26. TransCanada's employees in Burrillville, Rhode Island performed TransCanada's accounting services for the WSOS Agreement and the PPA Transfer Agreement since 1998, up until two days before TransCanada filed its motion to dismiss, stay, or transfer.

27. Eastern Edison, which served customers in Massachusetts, was the largest of the three EUA companies.

Michael J. Hager

SUBSCRIBED AND SWORN to before me this 7th day of July, 2005.

NOTARY PUBLIC

My Commission Expires: 4-4-08

664694v4