UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRANSCANADA POWER MARKETING LTD.,<br><br>Defendant. | ) | CA No. 05-234 |

**DEFENDANT TRANSCANADA POWER MARKETING LTD.'S REPLY TO "PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER"**

Defendant TransCanada Power Marketing Ltd. ("TransCanada") hereby replies to "Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Stay, or Transfer" (Plaintiff's "Opposition Memorandum").

Plaintiff Narragansett Electric Company ("Narragansett") does not dispute the fundamental grounds for TransCanada's Motion to Dismiss, Stay, or Transfer based upon the previously pending Massachusetts Action. Nevertheless, Narragansett argues that this Court should retain jurisdiction (apparently at the same time that the Massachusetts Court does so also, since Narragansett has not actively contested venue there) on grounds that: (i) TransCanada allegedly bears the burden of proof to establish the priority of its first-filed Massachusetts Action (an incorrect legal premise); (ii) TransCanada is not the "natural plaintiff" and allegedly "rushed to the courthouse" (both of which are demonstrably false); and (iii) one of the six primary "balance of convenience" factors – the public interest – allegedly overcomes on its own all other

relevant factors pointing to Massachusetts as well as the strong presumption in favor of the first-filed Massachusetts Action. None of Narragansett's arguments has merit. Moreover, even if this Court were inclined to consider retaining jurisdiction, it should in any event dismiss or stay this action unless or until the Massachusetts court declines jurisdiction.

## ARGUMENT

### I. AS THE SECOND-FILING PARTY, NARRAGANSETT BEARS A HEAVY BURDEN TO JUSTIFY RETENTION OF THIS CASE IN RHODE ISLAND.

Contrary to Narragansett's assertion (see Opp. Mem. at 17), it is well-established that the first-filed Massachusetts Action is entitled to presumptive priority, and that Narragansett, as the second-filing party, bears the burden of demonstrating that there are either special circumstances or sufficient inconvenience to warrant overcoming the strong presumption in favor of the Massachusetts Action. See Cruz v. Hartford Cas. Ins. Co., 2005 WL 1231965, at *2 (D.R.I. 2005); SW Indus. v. Aetna Cas. & Sur. Co., 653 F. Supp. 631, 634, 637, 639 (D.R.I. 1987); 800-Flowers v. Intercontinental Florist Inc., 860 F. Supp. 128, 131-136 (S.D.N.Y. 1994); J.P. Sercel Assocs. v. New Wave Research, 2003 WL 22299014, at *2 (D.N.H. 2003); Cent. States v. Paramount Liquor Co., 34 F. Supp. 2d, 1092, 1095 (N.D.Ill. 1999). All of these cited cases addressed the precise procedural situation here -- a motion to dismiss, stay or transfer by the defendant in the second-filed action -- and each imposed upon the plaintiff in the second-filed action the burden to justify retention of jurisdiction in the second-filed action. Id.[1]

The two cases cited by Narragansett do not support imposing any burden on TransCanada as the first-filing party. See Feinstein v. Brown, 304 F. Supp. 2d 279, 283-84 (D.R.I. 2004) (holding that there is a strong presumption favoring the first-filed action and imposing the burden

[1] TransCanada is also clearly the "natural plaintiff" in this case (see Section II infra), and thus is also entitled to a strong presumption in favor of the Massachusetts Action on that ground. Old Town Canoe Co. v. Confluence Holdings, 2005 WL 552005, at *2 (D. Or. 2005); BASF Corp. v. Symington, 50 F.3d 555, 559 (9th Cir. 1995).

of proof upon the party seeking to dismiss the *first-filed* action); Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000) (holding that the second-filing party generally bears the burden of proof, but that under a special rule applicable to patent actions the first-filing party was not entitled to the presumption in that case).[2]

## II. TRANSCANADA IS THE "NATURAL PLAINTIFF" AND DID NOT "RACE TO THE COURTHOUSE"

Narragansett alleges two "special circumstances" why this Court should override the presumption in favor of the first-filed action: TransCanada is not the "natural plaintiff," and TransCanada allegedly "raced to the courthouse." Both of these assertions are false.

First, it is abundantly clear from a simple reading of the Massachusetts Complaint, and Narragansett's identical Massachusetts Counterclaim and Rhode Island Complaint, that TransCanada is the "natural plaintiff" in these cases. (See MA Complaint and MA Counterclaim (TransCanada Exs. A, B) and RI Compl.) TransCanada sent a default notice to Narragansett, and asserts in its MA Complaint affirmative claims for damages for breach of contract under Massachusetts law. Narragansett's Massachusetts "Counterclaim," and its identical Rhode Island "Complaint," constitute no more than defenses to TransCanada's Massachusetts breach of contract claims. (MA Compl. ¶¶ 32-47; MA Counterclaim, ¶¶ 35-40; RI Compl., ¶¶ 35-40.) See also TransCanada Motion to Dismiss, at 4-5; BASF Corp., 50 F.3d at 558 ("actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs of their traditional right to choose the forum and time of

[2] The cases Narragansett cites for the general proposition that the first-filed rule is not to be mechanically applied are also unhelpful to its cause. (Opp. Mem. at 11-12.) In fact, these cases either support dismissal of Narragansett's second-filed action, see SW Industries, 653 F. Supp. at 634-39 (staying second-filed action); Feinstein, 304 F. Supp. 2d at 281-84 (denying a motion to dismiss the first-filed action); 800-Flowers, 860 F. Supp. at 131-136 (dismissing the second-filed action), or are inapplicable, see Glades Pharms. v. Call, Inc., 2005 WL 563726, at *8-9 (E.D. Pa. 2005) (declining to exercise first-filed rule only because the second-filed action had actually been filed first but was dismissed on grounds of forum non conveniens); Affinity Memory & Micro, Inc. v. K&Q Enters, 20 F. Supp. 2d 948, 950-55 (E.D. Va. 1998) (declining to exercise first-filed rule because the first-filed court had no jurisdiction over the plaintiff in the second-filed action, among other reasons also not applicable here).

suit"). Narragansett's assertion that its 3 months of "payments" to TransCanada preceding the Massachusetts Action – admittedly made as a settlement strategy, under protest and with reservation of rights, and with no promise to pay a fuel adjustment to TransCanada for the remaining 57 months of the Agreement (see Opp. Mem. at 8) – is silly, and clearly does not turn Narragansett into a "plaintiff."[3]

Second, Narragansett's conclusory "factual" allegations that TransCanada "raced to the courthouse" are simply baseless, and indeed, even if taken as true (which they are not), would not warrant overriding the strong preference in favor of the first-filed Massachusetts action. TransCanada really does not want to get into the details of these settlement negotiations between counsel, since even under Narragansett's version of those negotiations Narragansett does not meet its burden (see infra), but TransCanada feels it must do so to correct the record. Narragansett notably describes the negotiations between counsel by way of the conclusory allegations of a witness, Mr. Hager (see Hager Aff. ¶¶ 12-18), who was not directly involved in any of those negotiations. These referenced negotiations were conducted almost exclusively between respective counsel to TransCanada and Narragansett, Daniel C. Winston, Esq. and Gloria Kavanah, Esq. In short, here is what happened:[4]

---

[3] Narragansett's assertion that it believes it is the "plaintiff" is also markedly disingenuous: In the very arbitration negotiations referenced by Narragansett in its Opposition Memorandum, and included in the last written arbitration proposal sent by Narragansett to TransCanada on April 18, 2005, Narragansett proposed that TransCanada initiate any arbitration by submitting a "written statement of the dispute," to which Narragansett would submit "an answer."

[4] Like Narragansett, TransCanada submits information concerning settlement and arbitration discussions in full recognition of their protection under Federal Rule of Evidence 408, and not to prove liability but rather to address the relevant procedural background. TransCanada has not provided copies of the referenced communications and documents exchanged between counsel in view of Rule 408, but makes the representations herein consistent with the obligations of truthfulness under Fed. R. Civ. P. 11. To the extent the Court deems it necessary to delve further into the negotiations, TransCanada's counsel is fully willing to do so but suggests that the Court undertake such a review based only upon the representations of counsel who were actually involved in the negotiations, supported by the actual documentary exchanges. TransCanada doubts, however, that Narragansett's counsel involved in the negotiations would seriously dispute any of the assertions made herein. If necessary, TransCanada will also move to strike paragraphs 12-18 of Mr. Hager's Affidavit on grounds of lack of personal knowledge. In any event, TransCanada believes, as set forth herein, that the Court can avoid this whole factual issue since, even under the incorrect factual rendition of counsel's negotiations provided by Mr. Hager, Narragansett has not shown a "race to

- On March 1, 2005, TransCanada provided notice of default to Narragansett. The parties thereafter met to attempt to resolve the dispute.

- From April 1, 2005 through April 19, 2005, counsel negotiated terms for a possible expedited arbitration and exchanged drafts of a proposed arbitration agreement. TransCanada at all times insisted that arbitration was an option only if it could be accomplished on an expedited basis with a hearing proposed to occur in Summer 2005, and only if all other arbitration terms could be agreed upon.

- On April 19, 2005, TransCanada sent a draft arbitration proposal to Narragansett which still contained substantial points of disagreement, most notably regarding the scheduling. TransCanada insisted on a July 2005 hearing and an immediate start to the arbitration process, while Narragansett insisted on a slower, less defined arbitration schedule.

- On April 20, 2005, TransCanada sent an e-mail to Narragansett's counsel asking for a response. Narragansett's counsel responded by stating that Narragansett was reconsidering arbitration entirely, and at that point was not willing to respond to TransCanada's arbitration proposal. Narragansett instead suggested settlement talks. TransCanada therefore agreed to defer further negotiation of the arbitration agreement only until Tuesday, April 25, 2005, pending settlement meetings on Friday, April 22, 2005, and Monday, April 24, 2005.

- On Tuesday, April 25, 2005, to allow for a few more days of settlement discussions, TransCanada's counsel sent an e-mail to Narragansett's counsel stating that it would be "willing to hold off further negotiation on the Arbitration Agreement *through the end of this week*" (i.e., until Friday, April 28, 2005). (Emphasis added.) Those settlement discussions were unsuccessful, and no draft proposals regarding those discussions were ever exchanged following the April 24, 2005 meeting.

- From April 19 to May 17, 2005, Narragansett declined to respond to TransCanada's time-sensitive April 19 arbitration proposal, and never expressed further willingness to negotiate an arbitration. The parties were at a standstill.

- On May 17, 2005, TransCanada filed its Massachusetts Complaint.

- On May 26, 2005, Narragansett filed its Rhode Island Complaint.

- On May 27, 2005, Narragansett's counsel raised with TransCanada's counsel for the first time an entirely new proposed "partial settlement," this time involving replacement of TransCanada by another specific wholesale supplier. This "partial settlement" proposal was never raised until after TransCanada filed its Massachusetts Complaint on May 17, 2005, and the very first draft of that "partial

---

the courthouse" sufficient to overcome the presumption in favor of the first-filed Massachusetts Action. See discussion infra.

> settlement" proposal was sent by Narragansett's counsel to TransCanada's counsel on May 27, 2005. These new negotiations continued until early July, when this "partial settlement" proposal also fell through.

These circumstances clearly do not describe a "race to the courthouse" solely to obtain to preferred forum. Indeed, as this Court stated in Feinstein:

> [TransCanada] neither misled [Narragansett] into foreclosing litigation in order to negotiate a settlement and then filed suit, nor reacted to [Narragansett's] notice of imminent filing by "literally sprinting to the courthouse the same day." . . . [TransCanada] was not obligated to continue what, in [its] view, was a fruitless negotiation before coming to court.

304 F. Supp. 2d at 283 (internal citation omitted).

Fortunately, however, this Court need not delve into the details of the negotiations because, even assuming Narragansett's conclusory and incorrect rendition of the facts, those alleged facts do not establish an improper "race to the courthouse" either solely to obtain a preferred forum or otherwise sufficient to overcome the preference in favor of the first-filed Massachusetts Action. At most, Narragansett conclusorily alleges that suit was filed by TransCanada, the natural plaintiff, in its home forum which has substantial connections to the dispute, during prolonged and unsuccessful settlement discussions. (See Hager Aff. ¶¶ 12-18.) These facts do not come close to meeting Narragansett's burden even under the very case law cited by Narragansett. See Feinstein, 304 F. Supp. 2d at 281-83 (finding on facts similar to those alleged by Mr. Hager that a party filing during dispute resolution discussions had not improperly rushed to the courthouse, and ruling in favor of the first-filed action); Holmes Group v. Hamilton Beach/Procter Silex, 249 F. Supp. 2d 12, 14, 16-17 (D. Mass. 2002) (finding on similar facts that even a natural defendant filing during dispute-related correspondence did not improperly "react to notice of imminent filing by literally sprinting to the courthouse", and ruling in favor of the first-filed action); see also GT Plus Ltd. v. Ja-Ru, Inc., 41 F. Supp.2d 421, 423-24, 425-27

(S.D.N.Y. 1998) (party filing in the midst of settlement dialogue and even upon threats of litigation did not improperly race to the courthouse, and hence its first-filed action was proper).

The remaining case cited by Narragansett, Nortek, Inc. v. Molnar, 36 F. Supp. 2d 63 (D.R.I. 1999), is markedly distinguishable since in that case, the first-filing party (the putative defendant) affirmatively misled the second-filing party (the putative plaintiff) into waiting for an imminent response before rushing to the courthouse the very next day to file a declaratory judgment action. See id. at 65-66. Notably, the party that "rushed to the courthouse" in Nortek was not the natural plaintiff, but rather was the natural defendant filing a defensive, declaratory judgment action solely to obtain its preferred forum. Id. That is not the case here.

Here, TransCanada is the natural plaintiff with a presumptive right to file in its own forum, AmSouth Bank v. Dale, 386 F.3d at 763, 788 (6th Cir. 2004), which is heavily connected to the dispute. See GT Plus, 41 F. Supp.2d at 425-26. TransCanada originally sent a default notice under the Agreement, and (even based on Mr. Hager's allegations) did no more than file in its own forum after several months of unsuccessful settlement discussions. Narragansett makes no allegation of affirmatively misleading statements by TransCanada, or that TransCanada "reacted to notice of imminent filing" by rushing to the courthouse the next day. See Feinstein, 304 F. Supp. 2d at 283; Holmes Group, 249 F. Supp. 2d at 16-17; GT Plus, 41 F. Supp.2d at 425-27. Accordingly, even assuming the accuracy and sufficiency of Narragansett's conclusory submission, Narragansett has not overcome the strong presumption in favor of the first-filed Massachusetts Action on grounds of an alleged "race to the courthouse."[5]

[5] Moreover, as it is Narragansett's burden to establish facts supporting a race to the courthouse as a "special circumstance" (see Section I supra), the conclusory allegations submitted by Mr. Hager do not meet that burden under the circumstances set forth herein in the absence of more specific and documentary corroboration. Thus, if this Court were to find that Narragansett's conclusory submission (if true) would create a genuine issue as to whether there was a sufficient showing of a "race to the courthouse" to warrant overriding the first-filed rule, TransCanada asks that the Court consider the factual representations of counsel herein and require more detailed submissions by Narragansett's counsel actually involved in the relevant settlement discussions.

## III. NARRAGANSETT HAS NOT SHOWN THAT THE PUBLIC INTEREST OR OTHER CONVENIENCE FACTORS WARRANT OVERRIDING THE PRESUMPTION IN FAVOR OF THE MASSACHUSETTS ACTION.

Again, it is *Narragansett's* burden as the plaintiff in this second-filed action to show that the balance of convenience sufficiently weighs in favor of a Rhode Island forum to warrant overriding the strong presumption in favor of the first-filed Massachusetts Action. (See Section I supra.) Narragansett attempts to make this showing in two respects: First, Narragansett attempts to elevate one of the six convenience factors – the public interest – to a stand-alone argument that this Court should assert jurisdiction based solely upon the alleged interests of Rhode Island regulatory authorities and the Rhode Island public. (See Opp. Mem. at 9-10, 12-15.) Second, Narragansett alleges that a number of mostly irrelevant factual connections between Narragansett and Rhode Island support overriding the first-filed rule. Neither of these arguments has merit.[6]

First, Narragansett cites no legal authority for the proposition that the indirect interests of Rhode Island regulatory authorities and rate payers alone justifies retention of jurisdiction in Rhode Island. Narragansett's heavy reliance upon the alleged interests of the Rhode Island government agencies and public is also misleading, and clearly does not outweigh all the other

---

[6] Narragansett also makes two misstatements of law that need to be corrected. First, Narragansett is incorrect that, as the plaintiff in this Rhode Island Action, its forum choice is preferred. As established in the very case cited by Narragansett, SW Indus. (Opp. Mem. at 18), the general preference for a plaintiff's choice of forum "is inoperative in a later-filed action], where the plaintiff's claims [as here] would constitute compulsory counterclaims in the defendant's earlier-filed action." 653 F. Supp. at 637. See also TransCanada Motion to Dismiss, at 9.

Second, Narragansett is also incorrect that the parties' choice of Massachusetts law to govern the WSOS Agreement does not favor a Massachusetts forum. (Opp. Mem. at 19.) Again, as stated in the very case cited by Narragansett, Paradis v. Dooley, 774 F. Supp. 79, 83 (D.R.I. 1991), "[i]t is advantageous to have the lawsuit adjudicated by a federal district court . . . that is more familiar with [the applicable state] law" (citing Van Dusen v. Barrack, 376 U.S. 612, 645 (1964)); cf. SW Indus., 653 F. Supp. at 639 (familiarity with state law was not a significant factor only because the parties had not specified the applicable law and several foreign laws might apply in either jurisdiction). Finally, Narragansett's argument that the application of Massachusetts law is inconsequential because "Massachusetts law concerning the interpretation of contracts is fairly clear" (Opp. Mem. at 19) is belied by the fact that Narragansett appears to dispute aspects of Massachusetts law central to this case, such as its obligation under the WSOS Agreement and Massachusetts contract law to make reasonable efforts to obtain regulatory approval for a fuel adjustment factor for TransCanada over the full term of the Agreement. (See MA Compl. ¶ 17; MA Answer ¶ 17.) A Massachusetts court should decide this central issue of Massachusetts law. See also TransCanada Motion to Dismiss, at 11, 12.

factors pointing to Massachusetts and the presumptive priority of the first-filed Massachusetts Action. This case addresses a breach of contract dispute between two contracting parties, under an Agreement that the parties expressly stated was to be governed by Massachusetts law. TransCanada asserts that Narragansett breached express and implied contractual obligations in that Agreement under Massachusetts law. The terms of the WSOS Agreement were negotiated, agreed upon and executed between TransCanada and Narragansett (its predecessor) in Massachusetts. Both parties administered the Agreement from Massachusetts. (Taylor Aff. ¶¶ 5-19; Hager Aff. ¶¶ 2-4, 6.) Neither parties' claims seek to regulate or set rates in Rhode Island, and neither the Rhode Island regulatory authorities nor the Rhode Island rate-paying public are parties to the WSOS Agreement or these MA or RI Actions.

Thus, the Rhode Island regulatory authorities' "exclusive power" to set electricity rates in Rhode Island is irrelevant to this contract dispute. TransCanada is not asking for any particular rate to be charged to Rhode Island rate payers, nor for that matter would the Rhode Island District Court have any greater jurisdiction to decide that issue than a Massachusetts District Court. Similarly, whether and to what extent Narragansett chooses to seek reimbursement from Rhode Island rate payers or is ultimately able to recover from Rhode Island rate payers, the amounts of any damages awarded to TransCanada is not an issue before this Court, nor has that issue been raised by either TransCanada or Narragansett in the Massachusetts or Rhode Island pleadings. That is presumably an issue between Narragansett and the Rhode Island regulatory authorities, proceedings to which TransCanada has never been a party.

Narragansett also misleadingly refers to a statutory prohibition against termination of a wholesale supply agreement by "an electric distribution company" – here Narragansett. (See Opp. Mem. at 13.) Narragansett is not attempting to terminate the WSOS Agreement, and

Narragansett (correctly) does not assert that TransCanada needs regulatory approval to terminate the Agreement.

Notably, Narragansett is not able to cite a single case that supports this Court's retention of jurisdiction in Rhode Island based solely upon the alleged interests of Rhode Island regulators and rate payers. The only case Narragansett is able to cite, In re E. Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188 (E.D.N.Y. 1994), is simply off point. That case does not even address multiple filings in alternate forums; it arises from class action tort litigation; and the Court transferred the cased out of New York simply because New York bore absolutely no connection to the cases. See id.

Narragansett also raises a number of additional connections between Narragansett and Rhode Island – notably by way of the affidavit of its *Massachusetts*-based "business lead" for the WSOS Agreement, who is also a *Massachusetts* resident (see Hager Aff. ¶¶ 2, 6; Taylor Affidavit ¶¶ 14-19) – but the majority of these Rhode Island "connections" are irrelevant. For example: Narragansett touts its 470 employees in Rhode Island, but does not assert that a single one will be a witness or have involvement in this case; Narragansett asserts that TransCanada's accounting services are performed by employees (actually an affiliate's employees) in Rhode Island, but does not assert that these accounting services or employees are at all relevant to this case; Narragansett mentions cross-default provisions in the related PPA Transfer Agreement (Narragansett Ex. D), but fails to mention that this PPA Transfer Agreement was between TransCanada and *a Massachusetts* affiliate of Narragansett, the Montaup Electric Company (see Narragansett Ex. D, at 1); and Narragansett points out that the RIPUC hearings are in Rhode Island, but omits mentioning the fact that the relevant RIPUC testimony on Narragansett's behalf was provided by Narragansett representatives from Massachusetts (see Taylor Affidavit, ¶¶ 11,

15; and Narragansett Exhibit A, at 4-6 (July 10, 1998 RIPUC Decision, citing testimony of Massachusetts employees of EUA Service Corporation on behalf of Narragansett)). Accordingly, the additional Rhode Island "connections" asserted by Narragansett are irrelevant to this dispute, or actually support a Massachusetts rather than Rhode Island forum.

Finally, Narragansett's claims about the "exclusive" relationship between this dispute and Rhode Island, and the alleged need to have all contractual issues under the WSOS Agreement determined in Rhode Island, are also belied by Narragansett's own actions. If it was so important that all matters relating to electricity delivery in Rhode Island be determined only in Rhode Island, Narragansett (and its predecessors) would not have: specified that the WSOS Agreement is to be governed by Massachusetts law; would not have negotiated and administered the WSOS Agreement from Massachusetts; would not have testified at the RIPUC concerning the WSOS Agreement exclusively through Massachusetts employees of Narragansett's Massachusetts affiliates; and would not have located Narragansett's customer service center in Massachusetts. (See Taylor Aff. at ¶¶ 4-7, 11-19.)

## IV. EVEN TO THE EXTENT THIS COURT WERE TO CONSIDER RETAINING JURISDICTION, IT MUST DEFER TO THE MASSACHUSETTS COURT.

Finally, even to the extent this Court were to consider retaining jurisdiction of this Action, it must refrain from doing so unless and until the Massachusetts District Court chooses to divest itself of jurisdiction.

As this Court stated in Cruz, the court addressing a second-filed action should, as a matter of comity, defer to the decision of the court addressing the first-filed action where related proceedings are filed in two jurisdictions. Cruz, 2005 WL 1231965, at *3. See also, Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County, 542 F. Supp. 1317, 1321 (S.D.N.Y. 1982) (dismissing the second-filed case without prejudice unless and until the court hearing the first-

filed case declined jurisdiction); Ultronic Sys. Corp. v. Ultronix, Inc., 217 F. Supp. 89, 92-93 (D. Del. 1963) (staying second-filed case unless and until first-filed case declined jurisdiction).

Here, Narragansett has not filed any motion contesting jurisdiction in Massachusetts, but rather has answered the Massachusetts Complaint and the parties are awaiting a scheduling conference anticipated for early September 2005. Based upon the relative merits of Narragansett's weak arguments for a Rhode Island forum, this Court should dismiss this case. If, on the other hand, this Court does feel that Narragansett has raised genuine issues with respect to the more appropriate forum – which TransCanada respectfully suggests it has not – then this Court, as stated in Cruz, should in any event still dismiss this Action without prejudice or stay this Action (and defer any determination of TransCanada's Motion to Dismiss) unless and until the Massachusetts Court, upon motion by Narragansett in the MA Action, chooses to defer to this Rhode Island Action.

Respectfully submitted,

TRANSCANADA POWER MARKETING LTD.,

By its attorneys,

Mary C. Dunn

Kristin E. Rodgers #4842
Mary Cavanagh Dunn #6712
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

Pro Hac Vice Pending

Daniel C. Winston (BBO#562209)
Wendy S. Plotkin (BBO#647716)
Dara Y. Zelnick (BBO #660256)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, MA 02109
Telephone No.: (617) 248-5000
Fax No.: (617) 248-4000

July 23, 2005

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 25th day of July, 2005, I caused a true copy of Defendant Transcanada Power Marketing Ltd.'s Reply to Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss Stay, or Transfer to be sent via hand delivery, to Gerald J. Petros, Esq., Hinckley, Allen & Snyder LLP, 1500 Fleet Center, Providence, RI 02903